IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON MASJEDIAN, et al., | Case No. 24-cv-05677-MMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| CAPITAL ONE, NATIONAL ASSOCIATION, | |
| Defendant. | |

Before the Court is defendant Capital One, National Association's ("Capital One") "Motion for Summary Judgment," filed February 28, 2026. Plaintiffs have filed opposition to which defendant has replied. The matter came on regularly for hearing on May 8, 2026. Annick M. Persinger and Katelyn A. Donaldson of Tycko & Zavareei LLP appeared on behalf of plaintiffs Brandon Masjedian and Donald Nguyen. Andrew Soukup and Matthew Q. Verdin of Covington & Burling LLP appeared on behalf of Capital One.

The Court, having considered the parties' respective written submissions as well as the arguments of counsel made at the hearing,[1] and for the reasons stated in detail on the record at the hearing, hereby rules as follows.[2]

**BACKGROUND**

On January 6, 2025, plaintiffs filed their Second Amended Complaint ("SAC"), alleging defendant "advertises cash back sign-up bonuses that mislead and confuse consumers" into "applying for [Capital One's] SavorOne and Quicksilver branded credit cards." (See SAC ¶ 1.) In that regard, plaintiffs allege they applied for SavorOne credit

---

[1] At the hearing, the Court denied plaintiff's motion to reopen discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

[2] The reasoning set forth below is in no manner intended to replicate the entirety of the Court's analysis set forth at the hearing.

United States District Court
Northern District of California

cards in reliance on advertisements that promised a sign-up bonus they did not receive, namely, "a $200 cash bonus if [they] spent $500 on the card in the first three months after opening [the] account." (See SAC ¶ 37; see also id. ¶ 57.) Plaintiffs further allege they have been harmed as they "spent the required amount on the Credit Cards to obtain the sign-up bonus" they believed they were eligible to receive. (See SAC ¶¶ 96, 99.) Based thereon, plaintiffs, on behalf of themselves and all others "similarly situated," assert two causes of action, titled, respectively, (1) "Violations of California Business and Professions Code section 17500" ("FAL") and (2) "Violations of California Business and Professions Code section 17200" ("UCL"). (See SAC ¶¶ 94-100.)

On August 15, 2025, the Court dismissed the SAC with leave to amend to the extent plaintiffs sought injunctive relief and denied defendant's motion to dismiss in all other respects. On October 3, 2025, after plaintiffs declined to file an amended complaint, a Case Management Conference ("CMC") was held, whereby the Court, at Capital One's request, ordered an initial phase of discovery "limited only to the merits of [p]laintiffs' claims" (see Doc. No. 56 "Minute Entry for October 3, 2026, CMC") and set February 20, 2026, as the deadline for defendant to file "[its] motion for summary judgment or statement of election not to file [a] motion for summary judgment." (See id.)

After the initial phase of discovery, it became apparent that, contrary to the above-cited allegations in the SAC, plaintiffs had applied for and received a credit card that was not eligible for a sign-up bonus. Thereafter, Capital One moved for summary judgment.

**LEGAL STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317, (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking

summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

## DISCUSSION

At the outset, Capital One contends it is entitled to summary judgment for the reason that plaintiffs, according to Capital One, improperly changed their theory of liability from that alleged in the SAC.  Alternatively, Capital One argues, plaintiffs' causes of action are preempted by the National Bank Act and that the undisputed evidence demonstrates Capital One, as a matter of law, did not violate the UCL or FAL.

### A.    Changed Theory

Capital One argues it is entitled to summary judgment on the asserted ground that "the undisputed evidence confirms that the SAC's allegations concerning [p]laintiffs' experiences with Capital One are not true" (see Def.'s Mot. Summ. J. ("MSJ") at 16:12-13) and that it "is too late for [p]laintiffs to pivot to another theory of liability" (see id. at 16:26).  In response, plaintiffs argue their theory of liability is alleged in the SAC, and, that, even if their theory changed, summary judgment is not warranted on such basis given that "Capital One has shown throughout discovery that it understands [p]laintiffs' theory that they were deceived by the bonus advertisement."  (See Pls.' Opp'n Summ. J. ("S.J. Opp.") at 13:11-14.)

3

The Court agrees that the allegations in the SAC are broad enough to encompass plaintiffs' current theory that they were deceived "at the outset" and during the course of the approval process.  (See SAC ¶¶ 5-6, 22-23, 35.)  Moreover, Capital One had sufficient notice of that theory.  In particular, prior to their depositions, plaintiffs amended their interrogatory responses, setting forth in considerable detail the manner in which they applied for a Capital One card and their understanding as to what they were applying for.  (See Persinger Decl. Ex. 9 "Nguyen's Am. Resp. Def.'s First Set of Interrog." ("Nguyen Am. Interrog.") at 4-33; see id. Ex. 33 "Masjedian's Am. Resp. Def.'s First Set of Interrog." ("Masjedian Am. Interrog.") at 4-41.)

In light thereof, Capital One had "notice of the evidence it need[ed] to adduce in order to defend against . . . plaintiff[s'] allegations" see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292, and, accordingly, summary judgment is not warranted on changed-theory grounds.

## B.  National Bank Act

Defendant argues plaintiffs' "pre-approval theory" of liability under the UCL and FAL is preempted by the National Bank Act (the "NBA") to the extent such theory asserts "that Capital One 'could have included' different 'disclosures.'"  (See MSJ Reply at 12:18-20 (quoting S.J. Opp. at 18, 19).)

The Court agrees that plaintiffs' causes of action are preempted by the NBA insofar as they seek to impose affirmative disclosure requirements on Capital One.  In particular, plaintiffs appear to assert Capital One "could have included" disclosures "requir[ing] [p]laintiffs to acknowledge that they read a term that they were ineligible for the bonus" (see S.J. Opp. at 18:13-14) and displaying a "statement suggesting that they could be pre-approved for a different SavorOne card" (see id. at 19:2-3).  Such disclosures exceed the disclosures required by federal law.  See Gutierrez v. Wells Fargo Bank, N.A., 704 F.3d 712, 726 (9th Cir. 2012) (holding "[t]he requirement to make particular disclosures falls squarely within the purview of federal banking regulation and is expressly preempted"); see also Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 1034-

United States District Court
Northern District of California

36 (9th Cir. 2008).  A plaintiff may, however, pursue non-preempted causes of action under the UCL based on "statements likely to mislead . . .  customers" or "affirmative misrepresentations."  See Gutierrez, 704 F.3d at 730.

Here, to the extent plaintiffs' causes of action are based on allegedly misleading statements made in connection with Capital One's advertising, their claims are not preempted.  The Court next turns to the allegedly misleading statements.

**C.    Deception**

### 1.    Undisputed Facts[3]

Plaintiff Nguyen started his pre-approval process from Capital One's webpage titled "Compare All Credit Cards," which page displayed an array of over 30 credit cards, each in a separate column, and a number of those cards having the same color and card name to indicate they belong to a certain class of cards; for example, Quicksilver-branded cards are silver, Savor-branded cards are orange, Venture-branded cards are blue.  (See Harkins Decl. ¶¶ 19-21; see also id. Ex. J.)  On said webpage, four of the cards were orange Savor-branded cards, which, depending on the Savor card selected, required "Excellent," "Good," or "Fair" credit.  (See id. Ex. J.)  From there, Nguyen scrolled to the "SavorOne Rewards" card, immediately under which were the words "Excellent Credit," and under which appeared the following offer: "Earn a one-time $200 cash bonus once you spend $500 on purchases within the first 3 months from account opening" (hereinafter, "Bonus Advertisement").  (See id.)  Lastly, at the bottom of the column, there were two buttons labeled, respectively, "See If I'm Pre-Approved" and "Apply Now."  (See id.)  Nguyen clicked "See If I'm Pre-Approved."  (See id. ¶ 22.)

Plaintiff Masjedian started his pre-approval process via a Google search, which led to a webpage on Capital One's website titled "SavorOne Rewards" on which page he saw

---

[3] The Court's reference herein to certain pieces of evidence is not an indication that such evidence is the only pertinent evidence relied on or considered by the Court. The Court has reviewed and considered all the evidence submitted by the parties.

the Bonus Advertisement.  (See Harkins Decl. ¶ 62; see also id. Ex. D.)[4]   On said webpage, there were two buttons labeled "See If I'm Pre-Approved" and "Apply Now." (See id. ¶¶ 62-63.)  Masjedian clicked "See If I'm Pre-Approved."  (See id.)

After clicking the "See If I'm Pre-Approved" button, both plaintiffs navigated to a "Pre-Approval" webpage, which at the top of the page stated: "See if you're pre-approved for card offers—with no harm to your credit" and in the center of the page stated: "Explore the possibilities," under which appeared "We'll check your eligibility for these cards," under which the pictures of five different cards were displayed, namely, the "Quicksilver Rewards," "SavorOne Rewards," "Venture Rewards," "Venture X Rewards," and "VentureOne Rewards" cards, followed by the words "we will consider your eligibility for the cards above."  (See Harkins Decl. Ex. K at 1; see id.  ¶¶ 23-24, 63-64.)  After that statement, were the words "Let's get started! What's most important to you?" followed by the following six choices and the directive "select up to two of the following six choices: "No annual fee," "Travel rewards," "New card member offer, "Cash back," "Low interest," and "Building credit."  (See id. Ex. K.)

Nugyen and Masjedian both state they believe they selected "Cash back" but that they may have clicked "Skip question."  (See Nguyen Am. Interrog. at 19:25-20:12; Masjedian Am. Interrog. at 28:14.)  In any event, both Nguyen and Masjedian clicked the next button and proceeded to enter the information Capital One requested, including, inter alia, employment status, income, and monthly rent or mortgage, which process took approximately two minutes.  (See Harkins Decl. ¶¶ 25, 65.)  After completing that step, plaintiffs were told "One last step to see if you're eligible," comprising their agreement both to "Electrotonic communications" and a "Credit inquiry," as well as the following notice: "This tool may show you cards that have terms, features, and eligibility requirements that differ from our cards available elsewhere."  (See id. Ex. K at 9.)

---

[4] Although Masjedian's starting point was different from Nguyen's, by the time Masjedian submitted his application, he, like Nguyen, had viewed the Compare All Credit Cards webpage. (See Harkins Decl. ¶¶ 55-56.)

Plaintiffs proceeded by clicking at the bottom of the webpage the "See if I'm pre-approved" button.  (See id. ¶¶ 26, 66.)

Shortly thereafter, both plaintiffs were shown a webpage displaying at the top "Your credit qualifies you for multiple cards" followed by the pictures of three cards, namely, a "Quicksilver for Good Credit" card, a "SavorOne Rewards for Good Credit" card, and a "Platinum Mastercard" (hereinafter, "Pre-Approval Results Webpage"). [5] (See Harkins Decl., ¶¶ 27, 67; see also id. Ex. L.) [6]  In the "SavorOne Rewards for Good Credit" column, under the heading, in bolded, capital letters, "New Card Member Offer," the following statement appeared: "You'll earn the usual SavorOne dining and entertainment rewards, but won't be eligible for new cardmember bonus cash or 0% intro APR" (hereinafter "the Disclosure").  (See id. Ex. L.)

None of plaintiffs' pre-approved credit card results included a bonus cash offer. (See id.)  Plaintiffs proceeded by clicking on the "Complete my application" button under the picture of the "SavorOne Rewards for Good Credit" card (see Harkins Decl. ¶¶ 29, 69), by which action plaintiffs were directed to the "SavorOne for Good Credit" application page (see id. Ex. M), thereby advancing from the pre-approval stage to the application stage.

Once at the application stage, beginning near the top of the first page and on the top of each page thereafter, plaintiffs were given the option of clicking an "Offer Terms" button, which button hyperlinked to a single page with a number of pertinent terms, the first item being "Bonus Offer" followed by the Disclosure, i.e., "You'll earn the usual SavorOne dining and entertainment rewards, but won't be eligible for new cardmember bonus cash or 0% intro APR."  (See Harkins Decl. ¶ 31; see also id. Ex. N.)  Neither Nguyen nor Masjedian clicked the "Offer Terms" button.  (See id. ¶¶ 32, 72.)  They then

---

[5] Although not part of its name, the "Platinum Mastercard" was described as requiring "Fair Credit."  (See Harkins Decl. Ex. J ("Compare All Credit Cards Webpage").)

[6] Masjedian also qualified for a fourth card, the "VentureOne for Good Credit." (See Harkins Decl. ¶¶ 27, 51.)

7

proceeded to provide the requisite information requested by Capital One, after which was displayed an "Important Disclosures and Privacy and Opt Out Notice," (see id. ¶¶ 34, 74),[7] and then a "Submit my application" button, which they both clicked (see id. ¶¶ 35, 75).

After submitting their applications for the SavorOne for Good Credit card, plaintiffs received emails from Capital One (hereinafter, "Welcome Emails"), in each of which, the Disclosure, i.e., "You'll earn the usual SavorOne dining and entertainment rewards, but won't be eligible for new cardmember bonus cash or 0% intro APR," was prominently displayed in a separate box.  (See id. ¶¶ 37, 77; see id. Exs. Q, X).

### 2.    Plaintiffs' Claims

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice," see Cal. Bus. & Prof. Code § 17200, and, the FAL, prohibits any "unfair, deceptive, untrue, or misleading advertising," see id. § 17500.  In the instant case, plaintiffs' causes of action under both statutes are predicated on alleged misrepresentations, and, consequently, are "governed by the reasonable consumer test," whereby a plaintiff must show that "members of the public are likely to be deceived."  See Williams v. Gerber Prods., Co., 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation and citation omitted).[8]  "[W]hether a business practice is deceptive will usually be a question of fact" See id.  "In some circumstances," however, "courts may conclude that a business practice is not likely to deceive a reasonable consumer as a matter of law."  See Holt v. Noble House Hotels & Resort, Ltd, 370 F. Supp. 3d 1158, 1167 (S.D. Cal. 2019) (citing

---

[7] The Notice did not include any reference to a sign-up bonus.  (See Harkins Decl. Ex. O.)

[8] Plaintiffs' expert's opinion that "disclosures that appear later in a decision process that are embedded within surrounding information are less likely to be noticed or fully incorporated into consumers' judgment" (see Persinger Decl. Ex. 3 (Decl. of Dr. Vicki Morwitz) ¶ 189), is not, standing alone, consistent with the reasonable consumer test, which requires a likelihood of deception, not simply persuasive advertising.  Moreover, as set forth below, the Disclosures in this case were neither late nor embedded.

United States District Court
Northern District of California

Freeman v. Time, Inc., 68 F.3d 285, 289-90 (9th Cir. 1995)).[9]

In the instant case, plaintiffs appear to proceed under two distinct theories of deception, a "bait and switch" theory and the theory that they were misled to believe the SavorOne for Good Credit card each received was the card that came with the sign-up bonus.

### a.   Alleged Bait and Switch

Plaintiffs argue Capital One's sign-up bonus advertising constitutes deceptive "bait and switch" advertising because, plaintiffs assert, there was a "$200 cash bonus with $500 spend requirement that [plaintiffs] saw advertised that caused them to enter the transaction at all (the bait); and Capital One then told them they were 'pre-approved' for a seemingly identical version of the same branded card, but which did not have the bonus, that they would never have sought from the outset (the switch)." (See S.J. Opp. at 17:14-18.)

The above-described circumstances are not descriptive of a bait and switch, in that plaintiffs claim they were unaware that their cards did not qualify for the sign-up bonus until after they had applied for those cards and made purchases thereon, whereas, in a bait and switch situation, consumers are told prior to their making a purchase that the product does not qualify for the offer and, at that point, they go ahead and buy it anyway. For example, in Veera v. Banana Republic, LLC, 6 Cal. App. 5th 907 (Cal. App. 2016), a clothing store put up signs in its windows advertising, without disclosing any limitations, a "40 percent off sale," after which the plaintiffs "selected various items for purchase at the advertised discount," only to be told, "as the items were being rung up at the cash register, . . . the advertised discount did not apply to their chosen merchandise," at which

---

[9] Plaintiffs' citation to consumer complaints posted on public forums "regarding Capital One's advertised bonus" (see Persinger Decl. ¶ 19), does not preclude such a finding, in that such complaints constitute hearsay, and, even if admissible, lack the requisite relevance, there being no showing as to what those consumers saw, where and when they saw it, and whether the number of posts represents a meaningful percentage of the number of cards issued (see id. Ex. 101).

point, having invested the time, they purchased the items. See id. at 910. Moreover, in the cases on which plaintiffs rely, the defendants used misrepresentations to lure the customers in the first instance, whereas, here, as discussed below, no such misrepresentations were made.

### b.    Alleged Misrepresentation

There is no dispute that the proviso: "You'll earn the usual SavorOne dining and entertainment rewards, but won't be eligible for new cardmember bonus cash or 0% intro APR" was disclosed to plaintiffs multiple times, namely, twice on webpages plaintiffs viewed and once in a Welcome Email, as well as once on a webpage plaintiffs elected not to view.

Nevertheless, plaintiffs argue, "the UCL and FAL . . . do not require consumers like [p]laintiffs to search for fine print disclaimers like the ones that Capital One included buried late in the process." (See S.J. Opp. at 17:21-23.) The Court understands plaintiffs, by such contention, to be criticizing the Disclosure on three grounds: size, location, and timing. The Court addresses each in turn.

First, the size and font used for the Disclosure on Capital One's website and Welcome Emails is the same as that used for the surrounding text, including the text used to describe any benefits and to convey any other important information. Indeed, the Disclosure is set out in the same size and font as the sign-up bonus, which plaintiffs assert was prominently displayed.

The cases on which plaintiffs rely are distinguishable, in that those cases concerned large-print representations on the front of a product's packaging as compared with fine-print disclaimers on the back. See, e.g., Williams, 552 F.3d at 938-40 (holding "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"). Moreover, those cases concerned misrepresentations, whereas plaintiffs here point to no such arguably false statement. See e.g., Whiteside v. Kimberly-Clark, 108 F.4th 771, 774, 782 (finding plaintiff's pled

10

plausible claim where product was described on front of package as "plant-based" and ingredients were listed on back under heading "Natural and Synthetic").

Second, the Disclosure is not buried; for example, on the page on which plaintiffs primarily focus, the Pre-Approval Results Webpage, the Disclosure is set out as a single sentence surrounded by clear space and under the prominent heading "NEW CARD MEMBER OFFER"; further, essentially that same disclosure is set out at the same place for the other pre-approved cards that are displayed on either side of the SavorOne for Good Credit card.

Third, contrary to plaintiffs' description, a clear presentation of the Disclosure did not appear for the first time "late in the process," i.e., in the Welcome Emails. Rather, as discussed above, the Disclosure was, prior to that mailing, easy to read on two webpages plaintiffs concededly were interested in and viewed.

Lastly, to the extent plaintiffs assert they "did not expect to be pre-approved for a lower tier of the SavorOne card that they were not warned of and did not know existed" (see S.J. Opp. at 23:6-7), their argument is not persuasive. Although, as plaintiffs note, the card that came with the sign-up bonus and the card for which they were approved were both orange and bore the words "SavorOne," it was clear from the outset that, for each card brand, there were multiple cards in a single color and bearing the same name; additionally, the specific name for each such card appeared prominently and immediately under the picture of the card along with the type of credit needed for that card. (See Harkins Decl. Ex. J ("Compare All Credit Cards Webpage").) Moreover, none of the cards for which plaintiffs were pre-approved required excellent credit. Indeed, the names of three of those cards, the "Quicksilver Rewards for Good Credit" card, the "SavorOne Rewards for Good Credit" card, and the "VentureOne Rewards for Good Credit" card, include the words "for Good Credit," further distinguishing them from their excellent-credit counterparts.[10]

---

[10] As noted, the fourth card, the Platinum Mastercard, only requires "Fair Credit."

United States District Court
Northern District of California

Under such circumstances, a reasonable consumer would not have looked solely at the color of and name printed on the card and ignored the clearly displayed Disclosure and other indicia of differences. See, e.g., Bobo v. Optimum Nutrition, Inc., 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015) (holding "a reasonable consumer . . . cannot look at only one statement to the exclusion of everything else and claim he has been misled"). Put another way, inattentiveness is not the test.

In sum, Capital One having made clear that plaintiffs were applying for a SavorOne for Good Credit Card and not the SavorOne Rewards card, and having clearly and timely disclosed that the SavorOne for Good Credit card did not come with a sign-up bonus, plaintiffs have failed to raise a triable issue as to Capital One's alleged violation of either the UCL or FAL.

Accordingly, Capital One is entitled to summary judgment on both claims.

### CONCLUSION

For the reasons stated above, Capital One's motion for summary judgment is hereby GRANTED, and the Clerk is hereby DIRECTED to enter judgment in favor of said defendant.

**IT IS SO ORDERED.**

Dated: July 2, 2026

MAXINE M. CHESNEY
United States District Judge

(See Harkins Decl. Ex. J ("Compare All Credit Cards Webpage").)

12